UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | | |
|---|---|---|
| LEEANN NICOLE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | 6:17-cv-261-JMH |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| NANCY A. BERRYHILL, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*

Plaintiff Leeann Nicole Smith brings this matter under 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Acting Commissioner of Social Security. The Court, having reviewed the record and the cross motions for summary judgment filed by the parties, will **AFFIRM** the Commissioner's decision because the claimant has failed to properly raise any arguments demonstrating remand is warranted and the ALJ's decision is supported by substantial evidence.

## I. Standard for Determining Disability

Under the Social Security Act, a disability is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). In determining disability, an Administrative Law Judge ("ALJ") uses a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform past relevant work; and, if necessary, Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.*; *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II. Procedural and Factual History

Smith filed an application for supplemental security income ("SSI") on August 9, 2013, alleging disability as of July 31, 2010. [TR 237]. Smith alleged disability due to mental impairments, including depression, dipolar disorder, a learning disability, and paranoia. [TR 268]. Smith's application for benefits was denied initially and upon reconsideration.

### A. Medical Evidence at Issue

In May 2014, Dr. Naushad Haziq performed a consultative internal medicine exam. [TR 544-50]. Dr. Haziq's exam noted that Smith complained of "depression, bipolar disorder, a learning

disability, and paranoia" but Smith presented with no physical complaints. [TR 544]. Dr. Haziq noted a "longstanding history of anxiety, bipolar disorder, learning, and depression, since age 10" but noted that Smith was not taking medications for these disorders at the time of the exam. [*Id.*]. Dr. Haziq also reviewed records from the Manchester Memorial Hospital and from he Willowbrook Women's Center. [TR 545].

In his examination notes, Dr. Haziq stated that Smith "appear[ed] very anxious," was "trembling," and "could not sit still." [TR 546]. Dr. Haziq noted that Smith was somewhat tearful and cried at times during the exam. [*Id.*]. Additionally, Dr. Haziq made a general observation that Smith could speak understandably and follow instructions without difficulty. [*Id.*]. Finally, Dr. Haziq listed his impression as "moderate to severe anxiety." [TR 547].

Additionally, records from physician's assistant Crystal Smith, PA-C, reflect diagnoses of an unspecified anxiety disorder, major depressive disorder, and fatigue, among other physical symptoms and complaints. [TR 551]. Medical records indicate that Smith had been treated with prescription medication Sertraline.[1] [TR 552]. Otherwise, Smith's primary care medical records

---

[1] The prescription medication Sertraline is more commonly referred to by its brand name, Zoloft. Sertraline is used to treat depression, obsessive compulsive disorder (OCD), social anxiety disorder, panic disorder, and other related mental health issues.

3

demonstrate no significant medical treatment for mental health impairments or issues. [TR 551-53].

In November 2013, Dr. Timothy L. Baggs, Psy.D., performed a consultative examination on Smith. [TR 533-42]. Smith reported that she was applying for benefits due to bipolar disorder, depression, and anxiety. [TR 533]. Smith stated that she had been impacted by these mental health issues her entire life. [*Id.*].

Dr. Baggs inquired about Smith's symptoms related to her mental health impairments. Smith reported that she did not feel like herself, was very paranoid, and was experiencing insomnia. [TR 535]. Smith stated that she had difficulty getting along with other people and wanted to stay in bed constantly. [*Id.*]. Still, Smith noted no required psychiatric hospitalization but reported that she had participated in a program through Comprehensive Care in 2009. [TR 535].

Furthermore, Smith reported that she had a troubled childhood, had difficulty in school, struggled with drug dependency issues, and had past legal issues. [TR 533-537]. Smith reported that she was on a Suboxone program related to substance abuse issues. [TR 536].

Based on result of the examination, Dr. Baggs stated that Smith presented as a woman who was experiencing drug addiction. [TR 539]. Dr. Baggs also noted that Smith reported experiencing

4

bipolar disorder but said that "questioning of the claimant this date would not tend to suggest symptoms of sufficient amount to warrant diagnosis." [*Id.*]. Furthermore, Dr. Baggs stated that Smith had difficulty articulating symptoms of depression other than reporting that she was socially withdrawn and was experiencing insomnia. [*Id.*]. As a result, Dr. Baggs's primary diagnosis was drug addiction, not any mental health impairment or disorder. [*Id.*].

Finally, Dr. Baggs opined that Smith had the ability to understand and remember simple instructions, seemed capable of maintaining sustained concentration and persistence in the completion of a task in a normal amount of time, and could respond and adapt effectively to pressures found in normal work settings. [TR 40].

Additionally, state agency medical consultants Drs. Jack Reed and Laura Cutler reviewed Smith's medical records. Dr. Reed found that Smith has no medically determinable physical impairment. [TR 104-05]. Dr. Cutler opined that Smith had mild restriction in activities of daily living, and had moderate difficulties in maintaining social functioning, concentration, persistence, and pace. [TR 106].

## B. Administrative Hearing

On February 25, 2016, Smith appeared at an administrative hearing before ALJ Donald A. Rising.[2] [TR 45-84]. Smith was represented by attorney Kenneth Stepp at the administrative hearing.

At the hearing, Smith reported that she lived in a mobile home with her husband and father-in-law. [TR 51]. She stated that she has a ninth-grade education and that while she had thought about getting a GED, she had not taken any steps to acquire a GED. [*Id.*]. Smith reported that she could read but had difficulty understanding what words mean. [*Id.*]. Smith reported that she had worked intermittently in food service jobs but that she quit because she was unable to deal with the customers and other employees. [TR 53-54].

Smith was also asked about the medical problems that prevent her from working. Smith stated that she was disabled due to her anxiety. [TR 55]. When asked whether she got treatment for anxiety or took medication Smith responded, "Yeah, I do, and that's what I'm trying to tell you, is I don't know. You have to look at these papers. I don't have . . . no idea what you're talking about or nothing. You just have to look at these papers." [TR 55-56].

---

[2] Smith appeared at a brief administrative hearing on October 22, 2015. [TR 34-43]. This hearing was continued when Smith indicated that she wanted to be represented by counsel at the hearing.

When the ALJ asked what Smith was referring to by "these papers" and whether she was referring to school records, Smith curtly replied, "All of it." [TR 56]. Smith also reported that she had taken Zoloft off and on for a few years, which helps with her anxiety. [TR 57-58]. Smith reported that she was a "nervous wreck" at the hearing and stated that she did not get along with people. [TR 58-59].

The ALJ also discussed physical problems with Smith. Smith reported that she had hepatitis C and suffered from restless leg syndrome. [TR 59-60]. Smith reported that hepatitis C caused symptoms including "being sick to your stomach, headache, no appetite, [and] loss of weight." [TR 60-61]. Smith stated that she suffered from these symptoms of a daily basis and that, while she took no medicine for hepatitis C, she was supposed to have a biopsy of her liver. [TR 61].

Next, the ALJ asked Smith about her restless leg syndrome and her ability to stand and sit. [TR 62]. Smith reported that she could only stand for around ten minutes and that if she stood for a longer period, she would feel like she was going to pass out. [*Id.*]. Smith also noted that she could only sit for short periods of time due to back pain. [*Id.*].

As far as daily activities were concerned, Smith reported that she could bathe herself, dress herself, and perform some household chores, like sweeping. [TR 62-63]. Smith stated that

7

her husband did most of the cooking and laundry. [TR 63]. Furthermore, Smith stated that she did not have a driver's license, had no hobbies, did not go to the grocery, and spent most of her time during the day laying in bed and watching television. [TR 63-64]. Smith also reported that she had three children—ages nine, five, and approximately two at the time—that are cared for by others. [TR 66-68].

Moreover, Joann Bullard, a vocational expert, testified at the hearing. The ALJ asked the vocational expert a hypothetical question based on an individual of Smith's vocational profile who perform work at all levels of exertion that involved simple, one or two step instructions, occasional public contact, and infrequent changes in routine. The expert testified that the hypothetical individual could perform medium, unskilled occupations such as hand packager, industrial cleaner, and laundry laborer. [TR 72].

Smith's attorney then told the vocational expert to assume that the claimant is telling the truth that she could not get along or be around other people and then asked whether there were any jobs that Smith could perform. [TR 73]. In response, the vocational expert said that "[i]f she could not work with coworkers – and tolerate coworkers at all, she could not work, sir." [*Id.*].

Finally, Smith's father-in-law, Herman Smith, testified at the hearing. Mr. Smith indicated that he lived in the same

household as the claimant and her husband. [TR 75-76]. Mr. Smith said that the claimant is forgetful and listed numerous incidents where the claimant had gotten distracted or forgotten something. [TR 76-77]. Additionally, Mr. Smith reported that the claimant did not like to be around other people, including visitors in the home, and often got angry. [TR 77-79]. Mr. Smith stated that the claimant would often burn food while cooking and would mix dirty and clean laundry together and must wash all the laundry again. [TR 80-82]. Finally, Mr. Smith opined that the claimant was unable to hold a job. [TR 78].

### C. ALJ Decision and Current Appeal

On April 7, 2016, the ALJ issued an unfavorable decision, finding that Smith was not disabled. [TR 7-18]. At the time of the decision, Smith was twenty-six.

In his written decision, the ALJ found that Smith had the following severe impairments, learning disability, anxiety, depression, and substance abuse disorder, but that these impairments did not presumptively meet or equal a listed impairment. [TR 12-15]. Additionally, the ALJ found that, despite these impairments, Smith could perform medium exertion occupations that existed in significant numbers in the national economy. [TR 15-18]. The appeals council denied review. [TR 1-5].

Subsequently, Smith initiated the present appeal. [DE 2]. Consistent with the Court's standing scheduling order in Social

Security cases, the parties filed cross motions for summary judgment [DE 13; DE 15]. As a result, this matter is ripe for review.

### III. Standard of Review

When reviewing the ALJ's decision, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec*, 693 F.3d 709, 713 (6th Cir. 2012). This Court determines only whether the ALJ's ruling is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court is to affirm the decision, provided it is supported by substantial evidence, even if this Court might have decided the case differently. *See Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999).

Even so, the existence of substantial evidence supporting the Commissioner's decision cannot excuse failure of an ALJ to follow a mandatory regulation that "is intended to confer a procedural protection" for the claimant. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543, 546–47 (6th Cir. 2004). "To hold otherwise ... would afford the Commissioner the ability [to] violate the

regulation with impunity and render the protections promised therein illusory." *Id.* at 546; *see also Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011) ("An ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009))).

## IV. Analysis

Smith raises four issues in the present appeal. First, Smith says that the overwhelming weight of the medical evidence, including the opinions of treating source physicians, proves that Smith is totally disabled. Second, Smith maintains that law testimony at the administrative hearing conclusively demonstrates that she is disabled. Third, Smith contends that the ALJ committed reversible error in failing to apply the Sixth Circuit's test for evaluating pain. Fourth, and finally, Smith reasons that the testimony of the vocational expert indicates that Smith is totally disabled.

As an initial matter, the Court notes that Smith has largely failed to provide any meaningful argument on the issues raised on appeal. Smith has stated issues and have provided applicable rules of law, but Smith has failed to provide the requisite application of that law to the specific facts of this case. Generally, "issues adverted to in a perfunctory manner, unaccompanied by some effort

11

at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Vasquez v. Astrue*, No. 6:12-CV-125-KSF, 2013 WL 1498895, at *6 (E.D. Ky. Apr. 11, 2013) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

As such, many of Smith's arguments have been waived for failure to provide any argument, specific to the facts of this case, that demonstrates that Smith is entitled to relief. For example, on the first issue, Smith spends almost two full pages citing law but only provides the following argument, "Thus, benefits should be granted because the overwhelming weight of the treating and examining physician opinions prove that Leeann Smith is totally disabled." [DE 13-1 at 9-10, Pg ID 729-30].

But this Court is not engaging in de novo review or reweighing the evidence on appeal. As such, at least some argument and citation to the record is required for Smith to demonstrate that she is entitled to relief in this appeal. Counsel may not simply throw a basketful of law at the wall and hope that something sticks. Instead, counsel must take the additional step of pointing to specific instances where the ALJ erred and provide citations to the record that indicate that the ALJ's decision is not supported by substantial evidence. Otherwise, this Court is not obliged to

scour the entire record, looking for evidence that may support Smith's claims.

Still, on the merits, there is no apparent information before that indicates that the ALJ erred and after review of the relevant record evidence, the ALJ's decision is supported by substantial evidence. Each of the issues raised by Smith is addressed in turn below.

**(1) Medical Evidence and Opinions of Treating Source Physicians**

As an initial matter, the treating source rule has been recently modified and the controlling weight standard has been rescinded. *See* 82 Fed. Reg. 5844, 5845 (Jan. 18, 2017). Even so, this rule change only applies to more recent cases. See 82 Fed. Reg. 15,263 (Mar. 27, 2017). As a result, the treating source standard applies to this case since Smith's claim for benefits was filed before March 27, 2017.

In general, under the treating source rule, medical opinions from a treating source are given more weight than opinions from a non-treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating source is defined as a

> medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment

13

> relationship with [the claimant] ... [of] a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s).

20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Medical opinions are "judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

Here, Dr. Haziq, Dr. Baggs, and Ms. Smith may all be treating sources under the administrative regulations. Based on the primary care medical records, it appears that Ms. Smith had the longest longitudinal history of treating Smith. Still, most of the medical records from these providers provide information about subjective complaints by Smith, Smith's history, and medical diagnoses. There do not appear to be any medical opinions in the record, nor has Smith brought any to the attention of this Court, that were disregarded by the ALJ because these medical providers do not appear to have opined that Smith was disabled or suffered from any medical condition that would suggest she was disabled. As a result, the ALJ did not violate the treating source rule.

Furthermore, a review of the ALJ's written decision indicates that the ALJ reviewed the relevant medical evidence in the record. For instance, the ALJ discussed Smith's symptoms associated with

hepatitis C, back pain, and restless leg syndrome, including the fact that these symptoms made it difficult for Smith to stand or walk for long periods. [TR 12]. Still, in finding that the objective medical evidence did not support a finding that these impairments were severe, the ALJ considered a large amount of medical evidence, including records from emergency room visits, consideration of Smith's subjective complaints, and Dr. Haziq's finding that Smith has "no physical complaints" and Dr. Baggs's notation that he observed "nothing relevant regarding the claimant's gait, posture or motor behavior." [TR 12-13].

Additionally, it is clear that the ALJ considered the medical evidence provided by Dr. Baggs and the primary care records from Ms. Smith. For example, the ALJ cited to the primary care records from Clay County Primary Care. [TR 16]. Moreover, the ALJ considered and discussed Dr. Baggs findings and observations. [TR 16-17].

In sum, the ALJ "is not required to analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'" *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (quoting 20 C.F.R. § 404.953). Contrary to Smith's perfunctory assertion to the contrary, the ALJ's written decision indicates that he engaged in an in-depth review of the medical evidence and that the ALJ

15

considered the relevant medical evidence when determining that Smith was not disabled.

**(2) Lay Testimony and ALJ's Evaluation of Smith's Subjective Reports of Pain**

In a conclusory fashion, Smith appears to assert that law testimony and Smith's subjective complaints about pain conclusively demonstrate she is disabled. But this argument is unavailing.

First, the ALJ considered and discussed subjective reports and law testimony at numerous locations in his written report. For example, the ALJ considered Smith's activities of daily living and restrictions in making his decision. [TR 14]. Additionally, the ALJ considered and weighed law opinion testimony provided by Smith's mother and cited specifically to the testimony of Smith's father-in-law. [TR 14, 17].

Second, and more important, the objective medical evidence contradicts Smith's own subjective reports about her pain and symptoms and the lay witness testimony. None of the medical evidence suggests that Smith was ever treated for a significant period for chronic pain. In fact, the medical reports of Dr. Haziq and Dr. Baggs note that Smith had no significant physical complaints.

Ultimately, the ALJ's written decision reflects that he considered Smith's subjective complaints, Smith's activities of

daily living, and the opinions of law witnesses in making his determination. Moreover, the ALJ's determination is supported by the medical evidence.

**(3) Vocational Expert Testimony**

Finally, Smith's argument that the vocational expert's testimony proves that Smith is totally disabled is also futile. At the administrative hearing, Smith's attorney engaged in the following colloquy with the vocational expert:

> Attorney: *If we assume that the Claimant is telling the truth* and the Claimant cannot stand to be around other people, are there any jobs that she could perform that exist in substantial numbers in the national economy?
>
> Vocational Expert: Lord help me. Can – can I assume that what you're saying, Counselor, is that she could not work with coworkers and the public?
>
> Attorney: That's true. I think *she testified that* she gets mad and goes off and usually works about three days, so yes, that would be our assertion.
>
> Vocational expert: If she could not work with coworkers and – and tolerate coworkers at all, she could not work, sir.

[TR 73 (emphasis added)].

But here, the ALJ was not required to rely on a question that required assuming that all the claimant's subjective complaints were true if those subjective complaints are not supported by the medical evidence in the record. There is no doubt that Smith and others have noted that she is easily agitated, has difficult interacting socially, and does not like being around others.

17

Still, medical professionals, like Dr. Baggs, suggested that these symptoms were most likely associated with drug dependency issues, and not entirely attributable to mental health issues.

Moreover, the attorney's questions in the above colloquy are entirely rhetorical. First, the attorney's questions require that Smith be taken entirely at her work about the severity, intensity, and impact of her symptoms. Second, and obviously, there is no doubt that anyone who categorically cannot get along with the public and other coworkers, who gets angry easily, and who only works three days, will have difficulty finding and holding a job. The issue here, of course, is that Smith's subjective complaints *are not* supported by the record evidence, including the observations of multiple healthcare providers.

In sum, the ALJ was not required to accept the above colloquy as relevant evidence when that colloquy contained two rhetorical questions that require disregarding all other record evidence and accepting the claimant's complaints as true.

### V. Conclusion

Here, Smith's perfunctory arguments fail to raise any issues that require reversal. Additionally, after independent review of the relevant record evidence, it is clear that the ALJ's decision is supported by substantial evidence.

Accordingly, **IT IS ORDERED** as follows:

(1) The Commissioner's final decision is **AFFIRMED**;

(2) Plaintiff's motion for summary judgment [DE 13] is **DENIED**;

(3) Defendant's motion for summary judgment [DE 15] is **GRANTED**;

(4) Judgment in favor of the Defendant will be entered separately.

This the 29th day of March, 2019.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge